UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CINDY H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

6:20-CV-06895-LJV
DECISION & ORDER

---

On October 27, 2020, the plaintiff, Cindy H. ("Cindy"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] Docket Item 1. On September 7, 2021, Cindy moved for judgment on the pleadings, Docket Item 10; on February 4, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on March 18, 2022, Cindy replied, Docket Item 14.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Cindy applied for Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow,[3] this Court grants Cindy's motion in part and denies the Commissioner's cross-motion.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

**DISCUSSION**

I.  ALLEGATIONS

Cindy argues that the ALJ erred in two ways.  Docket Item 10-1.  First, she argues that the ALJ failed to properly evaluate the opinion of one of her treating physicians, Joseph I. Mann, M.D.  *Id.* at 11.  Second, she argues that the ALJ improperly discounted the opinions of treating physicians and her credibility in connection with her fibromyalgia[4] and migraine headaches.  *Id.* at 14.  This Court agrees that the ALJ erred and, because that error was to Cindy's prejudice, remands the matter to the Commissioner.

II.  ANALYSIS

**A.  The ALJ's treatment of Dr. Mann's opinion**

Cindy first argues that the ALJ erred in his evaluation of the opinion of one of her treating physicians, Dr. Mann.  Docket Item 10-1 at 11.  Cindy claims that the ALJ's reason for rejecting Dr. Mann's opinion was conclusory because the ALJ did not adequately address whether the opinion was supported by Dr. Mann's own records and consistent with other medical records and opinions.  *Id.* at 14.

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520(c).  At the fourth step, the ALJ determines the claimant's residual functional

---

[4] "Fibromyalgia" is "[a] common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances." *Fibromyalgia*, Stedmans Medical Dictionary § 331870, Westlaw (database updated Nov. 2014).  The cause of fibromyalgia is unknown, and the disorder disproportionately impacts women.  *Id.*

capacity ("RFC").[5]  When determining a claimant's RFC, "[t]he ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record."[6]  See Angela H.-M. v. Comm'r of Soc. Sec., – F. Supp. 3d –, 2022 WL 4486320, at *4 (W.D.N.Y. 2022) (citing 20 C.F.R. § 404.1520c(b)).  The Code of Federal Regulations lists five factors for the ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "that tend to support or contradict" the opinion.  20 C.F.R. §§ 404.1520c(b), 404.1520c(c)(1)-(5).  The ALJ is always required to "explain how [she] considered the supportability and consistency factors" because they are "the most important factors," and "may, but [is] not required to, explain how [she] considered the [remaining] factors."  Id. § 404.1520c(b)(2).

Here, Dr. Mann opined that Cindy was unable to work because her chronic daily headaches prevented her from concentrating.  Docket Item 9 at 357-59.  The ALJ did not find that opinion to be persuasive, however, and the ALJ explained why.  With

---

[5] A claimant's RFC "is the most [she] can do despite [her] limitations," 20 C.F.R. § 404.1545, "in an ordinary work setting on a regular and continuing basis," see Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86-8, 1986 WL 68636, at *8 (Jan. 1, 1986)).  "A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.

[6] An ALJ's review of medical evidence for disability claims filed on or after March 27, 2017, is governed by 20 C.F.R. § 404.1520c.  See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017).

respect to supportability, the ALJ noted that Dr. Mann's opinion was "supported to some extent by [Cindy's] reports of frequent, severe headaches . . . [but] not supported by his later treatment notes indicating stabilization of [Cindy's] headaches" or by "his treatment notes [which] do not indicate that [Cindy] complained of difficulty with concentration." *Id.* at 27 (citing Docket Item 9 at 230). As to the consistency between Dr. Mann's opinion and the rest of Cindy's medical records, the ALJ determined that "his opinion is not consistent with other evidence indicating successful management of [Cindy's] headaches such that she discontinued specialized neurological treatment." *Id.* (citing Docket Item 9 at 275-80, 292, 323, 328, 337).

Contrary to Cindy's argument, *see* Docket Item 10-1 at 14, that evaluation of Dr. Mann's opinion was not "conclusory." On the contrary, the ALJ explicitly discussed the supportability and consistency of Dr. Mann's opinion and cited evidence in the record that supported the ALJ's conclusion that the opinion was unpersuasive. Docket Item 9 at 27; *cf. Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 8 (W.D.N.Y. 2022) (finding ALJ's evaluation to be conclusory when it stated only that provider's "opinion is generally consistent and supportive, but not to the extent that [the claimant] has marked limitations with her ability to interact with others."). So the ALJ appropriately evaluated Dr. Mann's opinion.

### B. The ALJ's treatment of Dr. Momot's opinion

Cindy next argues that the ALJ erred in assessing the opinion of Christopher Momot, M.D. Docket Item 10-1 at 14. Among other things, Cindy says that the ALJ erred by failing to include the limitation in Dr. Momot's opinion that precluded exposure

to fluorescent lights, resulting in an RFC[7] that was not supported by substantial evidence.  *Id.* at 14-18.

The ALJ evaluated two opinions[8] from Dr. Momot and found them to be "partially persuasive."  Docket Item 9 at 27-28. More specifically, the ALJ found Dr. Momot's opinion that Cindy should "avoid fluorescent lighting and . . . have available public transportation" to be "consistent with [Cindy's] report that driving and fluorescent lights exacerbate her migraine headaches."  *Id.* at 27.  Likewise, the ALJ was persuaded by Dr. Momot's opinion that Cindy was "not able to perform her previous skilled job" because that was consistent with other complaints Cindy made.  *Id.* at 27-28.  But the ALJ found that Dr. Momot's limiting Cindy "to sedentary exertion with frequent breaks"

---

[7] The ALJ concluded that Cindy had the RFC to perform light work except that

> [Cindy] can occasionally reach overhead bilaterally and occasionally climb ramps and stairs, stoop, kneel, crouch and crawl[,] and frequently balance.  She can never climb ladders, ropes[,] or scaffolds.  She can never work at unprotected heights, around moving mechanical parts[,] or in extreme cold.  She can never be exposed to strobe lights, flashing lights[,] or bright lights, such as those found on a theatre stage.  She can occasionally operate a motor vehicle, occasionally work in humidity and wetness and is limited to a moderate noise level.  She [is] limited to the performance of simple, routine[,] and repetitive tasks, making simple, work related decisions[,] and tolerating few changes in routine work setting, defined as performing the same duties at the same station or location.

Docket Item 9 at 23.

[8] On January 12, 2017, Dr. Momot opined that Cindy could not "push, pull[,] or lift more than ten pounds" and that she "could sit in a chair most of the day, but she would need frequent position changes."  Docket Item 9 at 332-33.  On March 13, 2017, Dr. Momot opined that Cindy could probably perform a "very sedentary" job, "such as sitting in [sic] a desk," if there were no fluorescent lighting and she could take "frequent stretching breaks."  *Id.* at 330.

was unsupported by her "unremarkable exams, blood pressure at goal[, and] denial of profound muscle weakness or severe joint pain."  *Id.* at 28 (citing Docket Item 9 at 295, 300, 334, 338, 345).  And the ALJ found that the same limitation likewise was inconsistent with "findings of normal gait, full strength in the extremities, stable and nontender joints, intact sensation, normal deep tendon reflexes, full bilateral grip strength[,] and ability to rise from a chair without difficulty."  *Id.* (citing Docket Item 9 at 230, 275-79).

The ALJ erred in addressing Dr. Momot's recommendation regarding Cindy's exposure to fluorescent lighting.  *See* Docket Item 9 at 330.  Although the ALJ apparently found that part of Dr. Momot's opinion persuasive because it was consistent with Cindy's "report that . . . fluorescent lights exacerbate her migraine headaches," *id.* at 27, the ALJ inexplicably precluded Cindy's exposure not to fluorescent lights but only to "strobe lights, flashing lights[,] or bright lights, such as those found on a theatre stage."  *Id.* at 23.  Did the ALJ mean to include fluorescent lights among the "bright lights" that the ALJ explicitly mentioned?  Or did the ALJ reject Dr. Momot's limitation to fluorescent lights for some reason and think that avoiding strobe, flashing, and bright stage lights would do the trick?  This Court does not know because the ALJ does not say, and the Court therefore cannot evaluate the ALJ's conclusions.  *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)) (holding that the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'") (third alteration in original).

And there indeed is a difference between fluorescent lights and generic "bright lights," *see generally Pokluda v. Colvin*, 2014 WL 1679801, at *2 (N.D.N.Y. Apr. 28, 2014) (discussing ALJ's RFC determination specifically limiting claimant's exposure to fluorescent lights), that might well affect the outcome in this case. At step five, the ALJ found that Cindy could work as an Office Helper, a Non-Postal Mail Clerk, or a Rental Clerk, all of which would avoid strobe, flashing, and bright stage lights but might well involve working in an office with fluorescent lights. *See* Docket Item 9 at 30. Remand is therefore necessary for the ALJ either to include a limitation consistent with Dr. Momot's opinion or to explain why Cindy's RFC need not preclude exposure to fluorescent lights. *See, e.g.*, *Felix S. v. Comm'r of Soc. Sec.*, – F. Supp. 3d –, 2022 WL 4486319, at *5 (W.D.N.Y. 2022) (remanding where ALJ's RFC determination was inconsistent with the ALJ's assessment of a medical opinion).[9]

---

[9] The Court "will not reach the remaining issues raised by [Cindy] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020) ("However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues.") (citations omitted).

## **CONCLUSION**

For the reasons noted above, the Commissioner's motion for judgment on the pleadings, Docket Item 12, is DENIED, and Cindy's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   November 15, 2022
         Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE